﻿Citation Nr: AXXXXXXXX
Decision Date: 06/30/20 Archive Date: 06/30/20

DOCKET NO. 191015-38156
DATE: June 30, 2020

ORDER

An effective date earlier than February 9, 2015, for the grant of service connection for diabetes mellitus type 2 is denied.

An earlier effective date of July 13, 2016, for the grant of service connection for gastroesophageal reflux disease (GERD) with esophagitis and esophageal varices is granted.

Service connection for migraine headaches is granted.

REMANDED

Entitlement to an initial rating higher than 10 percent for GERD with esophagitis and esophageal varices is remanded.

Entitlement to service connection for a bilateral retina disability is remanded.

FINDINGS OF FACT

1. The effective date assigned for the grant of service connection for diabetes mellitus type 2 corresponds to the date of receipt of the Veteran’s request to reopen his previously denied claim, which had last been denied in a July 2013 rating decision that became final; there is no argument or indication in the record that the Veteran raised the issue of service connection of diabetes mellitus type 2 in the period between the July 2013 rating decision and February 9, 2015.

2. On July 13, 2016, the Veteran requested to reopen the issue of service connection for a gastroesophageal disability; a November 2016 rating decision denied the Veteran’s claim, but VA received new and material evidence prior to the expiration of the appeal period; VA, however, did not readjudicate the claim.

3. The Veteran’s migraine headaches are presumed to be related to his service in Southwest Asia.

CONCLUSIONS OF LAW

1. The criteria for an effective date earlier than February 9, 2015, for the grant of service connection for diabetes mellitus type 2 have not been met. 38 U.S.C. §§ 5107, 5110; 38 C.F.R. §§ 3.1, 3.155, 3.400. 

2. The criteria for entitlement to an earlier effective date of July 13, 2016, for the grant of service connection for GERD with esophagitis and esophageal varices have been met. 38 U.S.C. §§ 5107, 5110; 38 C.F.R. §§ 3.1, 3.155, 3.156(b), 3.400.

3. The criteria for entitlement to service connection for migraine headaches have been met. 38 U.S.C. §§ 1110, 1117, 5107; 38 C.F.R. §§ 3.156, 3.159, 3.303, 3.317.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from December 1997 to August 2004 and from May 2005 to June 2006. This matter comes before the Board of Veterans’ Appeals (Board) from rating decisions dated July 2019, August 2019, and September 2019.

The July 2019 rating decision denied service connection for a bilateral retina disability. The August 2019 rating decision denied an earlier effective date for the grant of service connection for diabetes mellitus type 2. The September 2019 rating decision granted service connection for a gastroesophageal disability, characterized as gastroesophageal reflux disease (GERD) with esophagitis and esophageal varices, and confirmed and continued a previous denial of service connection for migraines. The Veteran appealed these decisions via an October 2019 notice of disagreement. Regarding the gastroesophageal disability, the Veteran is appealing the initial disability rating and the effective date.

The present appeal falls within the purview of the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (2017), also known as the Appeals Modernization Act (AMA). The AMA created a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The three rating decisions listed above were all issued after February 19, 2019 and constitutes initial decisions; therefore, the modernized review system applies. Pursuant to this new framework, the Veteran chose to appeal directly to the Board and selected the Direct Review docket. 10/15/2019, VA Form 10182 Notice of Disagreement. With this docket, the Board may only consider the evidence of record at the time of the relevant agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

As explained below, the Veteran appears to be raising a motion of clear and unmistakable evidence (CUE) in an unspecified prior rating decision that denied service connection for diabetes mellitus type 2. See 10/15/2019, VA Form 10182 Notice of Disagreement. The AOJ has not adjudicated this matter. Therefore, 

the Board cannot adjudicate it. The Veteran may resubmit a motion of CUE in a prior rating decision to the AOJ or notify the AOJ that the claim is still pending.

Regarding the issue of service connection for migraines, the Board notes that the present appeal stems from a request to reopen a previously denied claim. In the September 2019 rating decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claim. The Board is bound by this favorable finding and will proceed to the address the claim on the merits. 38 U.S.C. § 5104A; 38 C.F.R. § 3.104(c).

 

Earlier Effective Dates

Generally, the effective date for the grant of service connection will be the day following separation from active service or the date entitlement arose, if the claim is received within one year after discharge from service. Otherwise, for an award based on an original claim, claim reopened after a final disallowance, or claim for an increased rating, the effective date is the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400.

Effective March 24, 2015, claims are required to be filed on standard forms, thus eliminating constructive receipt of claims and informal claims. See 79 Fed. Reg. 57,660 (Sept. 25, 2014). This case involves dates prior to March 24, 2015, so the regulations in place prior to that date are applicable and are referred to in this section.

A “claim” is defined broadly to include a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p). A claim for VA compensation must generally be in the form prescribed by the VA Secretary. See 38 U.S.C. § 5101(a); 38 C.F.R. § 3.151(a). Any communication or action, however, received from the claimant, or certain specified individuals on the claimant’s behalf, that indicates intent to apply for a benefit, and identifies that benefit, may be considered an informal claim. 38 C.F.R. § 3.155(a).

1. Entitlement to an effective date earlier than February 9, 2015, for the grant of service connection of diabetes mellitus type 2.

The March 2019 rating decision granted service connection for diabetes mellitus type 2, effective February 9, 2015. The Veteran seeks an earlier effective date. Specifically, he asserts that the grant of service connection should be retroactive to the date of his initial claim. 08/02/2019, VA Form 20-0996 Request for Higher-Level Review; 10/15/2019, VA Form 10182 Notice of Disagreement. 

A review of the record reflects that the Veteran first claimed service connection for diabetes mellitus type 2 in June 2008. 06/02/2008, Statement in Support of Claim. The RO denied that claim in an August 2008 rating decision. The Veteran appealed the decision via an October 2008 notice of disagreement. 10/16/2008, Statement in Support of Claim. The RO issued a statement of the case in March 2009. 03/20/2009, SOC. The Veteran, however, did not perfect an appeal by submitting a Form 9. As such, the August 2008 denial of service connection became final.

The Veteran submitted a request to reopen the issue of service connection for diabetes mellitus type 2 in January 2013. 01/09/2013, Fully Developed Claim. The RO denied the Veteran’s request in a July 2013 rating decision. The Veteran did not appeal this decision by submitting a timely notice of disagreement, 

and VA did not receive new and material evidence within one year after notice of the decision. As such, the July 2013 rating decision became final.

The Veteran again raised the issue of service connection for diabetes mellitus type 2 in a claim that was received on February 9, 2015. 02/09/2015, Fully Developed Claim. The receipt of this claim is the basis of the currently assigned effective date.

As noted above, for an award based on a claim reopened after a final disallowance, the effective date is the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. In this case, a July 2013 rating decision denied the Veteran’s request to reopen the issue of service connection for diabetes mellitus type 2, and, as explained above, that decision became final. Between the July 2013 rating decision and February 9, 2015 (the currently assigned effective date), a review of the record fails to show a formal or informal communication from the Veteran asserting entitlement to service connection for diabetes mellitus type 2. In the absence of such evidence, the Board concludes that the appropriate effective date is February 9, 2015, as that was the date on which the request to reopen the claim of service connection for diabetes mellitus type 2 was received. An earlier effective date is therefore denied.

The Board acknowledges that, in March 2019, previously unavailable military personnel records were associated with the claims. VA regulations indicate that, 

if at any time after VA issues a decision on a claim, VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file at the time of the prior decision, VA will reconsider the claim de novo. 38 C.F.R. § 3.156(c). If this exception applies, 

VA will review the claim de novo and the claim will essentially be treated as though the prior final denial or denials never occurred.

The recently received service records establish that the Veteran served in Southwest Asia. This fact, however, is not relevant to the grant of service connection for diabetes mellitus type 2, as this grant was based on a finding that the Veteran’s diabetes mellitus type 2 first manifested during service. 

See 03/04/2019, Rating Decision (“The medical opinion we received from the 

VA examiner dated February 26, 2019, provided a positive opinion for your diabetes mellitus and directly related it to your high blood sugar levels during your military service.”). As the recently received service records were not relevant to the grant of service connection for diabetes mellitus type 2, they do not provide the basis for an effective date earlier than February 9, 2015.

The Board also acknowledges that the Veteran has raised a claim of clear and unmistakable error (CUE) in the context of his appeal for an earlier effective date for the grant of service connection for diabetes mellitus type 2. Specifically, in his October 2019 notice of disagreement, the Veteran stated the following: “All evidence has been of record since I first claimed diabetes. It took me requesting my medical records to point out the evidence. I think it was clear and unmistakable error on VA not granting from the original date.” 10/15/2019, VA Form 10182 Notice of Disagreement.

The Board, however, cannot consider the allegation of CUE because it has not been adjudicated by the RO and is therefore not properly on appeal before the Board. “[E]ach wholly distinct and different CUE theory underlying a request for revision is a separate matter and, when attacking a prior [RO] decision, each must be presented to and adjudicated by the [RO] in the first instance and, if not, the Board lacks jurisdiction over the merits of the matter.” Jarrell v. Nicholson, 20 Vet. App. 326, 334 (2006). Additionally, an assertion of CUE is a motion or a request, not a theory of entitlement that can be considered part of another claim. See, e.g., Hillyard v. Shinseki, 24 Vet. App. 343, 355 (2011). The Board cannot consider an allegation of CUE in a rating decision in the first instance. Jarrell, 20 Vet. App. at 333. Hence, the Board does not have jurisdiction to adjudicate the issue. The Veteran is encouraged to resubmit the CUE motion to the RO for initial adjudication and identify the rating decision and the error(s).

2. Entitlement to an effective date earlier than August 27, 2019, for the grant of service connection for GERD with esophagitis and esophageal varices.

The September 2019 rating decision granted service connection for a gastroesophageal disability, characterized as GERD with esophagitis and esophageal varices, effective August 27, 2019. The RO indicated that the effective date was based on a supplemental claim that VA received on August 27, 2019. 

The Veteran seeks an earlier effective date. In his October 2019 notice of disagreement, he simply indicated that the currently assigned effective date is wrong. 10/15/2019, VA Form 10182 Notice of Disagreement.

The record reflects that the Veteran originally raised the issue of service connection for a gastroesophageal disability in June 2014. 06/13/2014, Fully Developed Claim. The RO denied that claim in a January 2015 rating decision. The Veteran did not appeal this decision, and no new and material evidence was received within one year of it. As such, the January 2015 decision became final.

More than a year later, the Veteran again raised the issue of service connection for a gastroesophageal disability in July 2016. 07/13/2016, Fully Developed Claim. In a November 2016 rating decision, the RO denied the Veteran’s request to reopen his claim.

The Veteran did not appeal the November 2016 rating decision. Nevertheless, 

in January 2017, he submitted a statement indicating the following: “I was denied some of my conditions because it said that I didn’t have proof of serving in the Middle East. I was in Kuwait at Ali Al Salem AB. I was there doing Third Country National (TCN) duty from October 1999 until December 1999. Attached is one my LES from that period to prove I received hazard duty pay. I thought my medals were proof enough. I haven’t had a Gulf War exam either.” The Veteran attached what appears to be a LES statement showing hazard duty pay in combat zone. 01/27/2017, Statement in Support of Claim & SHARE Print Screens. The RO did not acknowledge receipt of this evidence. More importantly, the RO did not readjudicate the Veteran’s claim considering the newly received evidence.

 

The Veteran again raised the issue of service connection for a gastroesophageal condition on August 27, 2019, when he submitted a supplemental claim. 

This claim culminated in the September 2019 rating decision that granted service connection for GERD with esophagitis and esophageal varices, effective 

August 27, 2019. 

***

Prior to February 19, 2019, for VA to reconsider a final denial, new and material evidence must have been received. A decision becomes final when the Veteran does not initiate or perfect an appeal with the required time frame. This rule of finality, however, has exceptions. One of these exceptions is a pending claim under 38 C.F.R. § 3.156(b). Subsection 3.156(b) provides that new and material evidence that is received prior to the expiration of the applicable appellate period will be considered to have been submitted in connection with the adjudicated claim. 

If new and material evidence is received during the appellate period, VA must readjudicate the claim. Mitchell v. McDonald, 27 Vet. App. 431, 436 (2015) (stating that a new decision must be issued that is “directly responsive” to the new evidence); see also Bond v. Shinseki, 659 F.3d 1362, 1367 (Fed. Cir. 2011). 

If VA fails to readjudicate the claim in light of the new and material evidence received, the claim remains pending until such readjudication occurs. See Beraud v. McDonald, 766 F.3d 1402, 1407 (Fed. Cir. 2014) (stating that because VA failed to readjudicate a claim in light of new and material evidence received during the appellate period, the claim remained pending despite an intervening adjudication).

As mentioned above, VA denied the Veteran’s claim of service connection for a gastroesophageal condition in a November 2016 rating decision. VA received new and material evidence in January 2017, within one year of the November 2016. VA, however, did not reconsider its decision in light of this new evidence. 

As such, the November 2016 denial of service connection for a gastroesophageal condition did not become final and the relevant claim remained pending. 

***

In this case, the RO assigned the effective date of August 27, 2019, date on which it received a supplemental claim from the Veteran. Having determined that there was a pending claim at the time of the August 2019 supplemental claim, the Board turns to the question of whether an earlier effective date is warranted.

When subsection 3.156(b) applies, and evidence is received during the appeal period following a disallowance, resulting in a later grant of service connection, the effective date will be as though the former decision had not been rendered. 38 C.F.R. § 3.400(q)(1). Additionally, for an award based on a claim reopened after a final disallowance, the effective date is the date of receipt of the claim or 

the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(q)(2). 

A review of the record reflects that the pending claim was received by VA in July 13, 2016. The evidence of record establishes that, at the time of the July 2016 claim, the Veteran had an esophageal disability, diagnosed as esophagitis, hiatal hernia, esophageal varices, and gastritis. He had also reported a continuous history of gastroesophageal symptoms since service. This reported history was validated by a favorable September 2019 VA opinion. The examiner opined that the Veteran’s current disability was at least as likely as not incurred in service.

Based on this evidence, the Board concludes that the Veteran is entitled to earlier effective date of July 13, 2016, for the grant of service connection for GERD with esophagitis and esophageal varices. An earlier effective date is not warranted because there is no indication that he raised a digestive system issue at any time between the final January 2015 rating decision and his July 2016 fully developed claim.

Finally, the Board acknowledges that, in March 2019, previously unavailable military personnel records were associated with the claims. VA regulations indicate that, if at any time after VA issues a decision on a claim, VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file at the time of the prior decision, VA will reconsider the claim de novo. 38 C.F.R. § 3.156(c). If this exception applies, VA will review the claim de novo and the claim will essentially be treated as though the prior final denial or denials never occurred.

The recently received service records establish that the Veteran served in Southwest Asia. This fact, however, is not relevant to the grant of service connection for a gastroesophageal disability, as this grant was based on a finding that the Veteran’s gastroesophageal disability was incurred in service, prior to his tour of duty in Southwest Asia, and therefore not related to service in Southwest Asia. In this regard, the September 2019 VA examiner stated that re-review of the STRs plainly reveals that the Veteran's symptoms of esophagitis, GERD, hiatal hernia and esophageal varices had their etiology not related to service in SWA. The Veteran clearly had symptoms of GERD before he even served in SWA. 09/23/2019, C&P Exam. As the recently received service records were not relevant to the grant of service connection for a gastroesophageal disability, they do not provide the basis for an effective date earlier than July 13, 2016.

Service Connection

3. Service connection for migraine headaches is granted.

The Veteran seeks service connection for migraine headaches. He asserts that his migraines are related to exposure to environmental hazards during service in Southwest Asia. 03/23/2019, Fully Developed Claim. An April 2019 

VA examination shows a diagnosis of migraine headaches. The VA examiner opined that the Veteran’s headaches were manifestations of a diagnosable but medically unexplained chronic multi-symptom illness of unknown etiology.

The September 2019 rating decision found that the Veteran performed service in Southwest Asia and that his diagnosed disability is a condition that has been presumptively linked to exposure to environmental hazards in Southwest Asia. The Board is bound by these favorable findings. 38 C.F.R. § 3.104(c).

Notwithstanding these favorable finding, the RO concluded that service connection for the Veteran’s migraine headaches was not warranted because the disability had not manifested to a degree of 10 percent or more, as required by 38 C.F.R. § 3.317.

VA shall pay compensation to a Persian Gulf War (PGW) veteran who exhibits objective indications of a chronic qualifying disability resulting from an illness, 

or combination of illnesses, manifested by one or more signs and symptoms, (such as those listed in 38 C.F.R. § 3.317(b)), provided that such disability became manifest either during active military, naval, or air service in the Southwest Asia (SWA) theater of operations during the PGW, or to a degree of 10 percent or more not later than December 31, 2021. 38 U.S.C. § 1117; 38 C.F.R. § 3.317. In this case, the Veteran has indicated that his migraine headaches first manifested in 2010, many years after service. As such, for presumptive service connection to be warranted, his disability must manifest to a degree of 10 percent or more.

Migraine headaches are rated under DC 8100, which provides a rating of 

10 percent for migraines with characteristic prostrating attacks averaging one in two months over the last several months. Migraines with less frequent attacks are to be rated as noncompensable. 38 C.F.R. § 4.124a, DC 8100.

The April 2019 VA examination indicates that the Veteran has characteristic prostrating attacks of migraine, with attacks occurring at a frequency less than the contemplated for a rating of 10 percent. Based on this evidence, the Veteran would not meet the criteria for presumptive service connection under 38 C.F.R. § 3.317.

The Board, however, finds that earlier evidence does support a finding that the Veteran’s symptoms have more closely approximated the criteria for a rating of 

10 percent. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 4.3, 4.7. Significantly, a December 2010 VA treatment note indicates that the Veteran had been having migraine headaches about once a month but was not having them about every other day. 07/02/2013, CAPRI, at 7. A May 2011 private treatment note indicates that the Veteran had headaches a few times a year. 02/24/2017, Medical Treatment Record - Non-Government Facility, at 25.

These treatment records predate the Veteran’s August 2019 supplemental claim. Typically, records outside the appellate period are not relevant for determining the severity of the Veteran’s disability. The Board, however, finds that this case presents an exception due to the applicability of 38 C.F.R. § 3.156(c) as the Board will explain next. 

A review of the record reflects that the Veteran first raised the issue of headaches in December 2010 and then again in January 2013 and July 2016. These claims were denied by the RO in ratings decision dated March 2011, July 2013, and November 2016, respectively. A review of these claims and rating decisions reveals that the Veteran first raised the matter of his service in Southwest Asia in July 2016. 

The November 2016 rating decision, however, determined that the Veteran had not served in Southwest Asia. This finding was later found to be erroneous. More importantly, the error was brought to light by previously unavailable service department records.

VA regulations indicate that, if at any time after VA issues a decision on a claim, VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file at the time of the prior decision, VA will reconsider the claim de novo. 38 C.F.R. § 3.156(c). 

If this exception applies, VA will review the claim de novo and the claim will essentially be treated as though the prior final denial or denials never occurred.

The Board finds that 38 C.F.R. § 3.156(c) applies here. As noted above, 

after November 2016, VA received previously unavailable service department records that show that the Veteran served in Southwest Asia. These records were relevant to the Veteran’s claim, as they validated the theory of entitlement put forward by the Veteran and are integral to the application of 38 C.F.R. § 3.317. 

As such, he is entitled to a de novo reconsideration of his initial claim.

Having determined that the appellate period dates back to December 2010, when the Veteran submitted his original claim of service connection, the Board further finds that the VA and private medical records from 2010 and 2011 (discussed above) support a finding that the Veteran’s headaches manifested to a degree of 

10 percent of more during the appellate period. Accordingly, the Veteran meets the criteria for presumptive service connection under 38 C.F.R. § 3.317.

REASONS FOR REMAND

1. Entitlement to an initial rating higher than 10 percent for GERD with esophagitis and esophageal varices is remanded.

The September 2019 rating decision granted service connection for a gastroesophageal disability, characterized as GERD with esophagitis and esophageal varices, rated as 10 percent disabling. The Veteran asserts that he is entitled to a higher rating. 10/15/2019, VA Form 10182 Notice of Disagreement.

The Veteran’s gastroesophageal disability is rated by analogy to hiatal hernia under DC 7399-7346. 38 C.F.R. § 4.114. DC 7346 provides a maximum rating of 

60 percent for disability manifesting as symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health. It provides a rating of 

30 percent for disability manifesting as persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. Finally, it provides a rating of 10 percent for disability manifesting as two or more of the symptoms for the 30 percent evaluation of less severity. Id. 

The Board further notes that ratings under diagnostic codes 7301 to 7329, inclusive, 7331, 7342, and 7345 to 7348 inclusive will not be combined with each other. A single evaluation will be assigned under the diagnostic code which reflects the predominant disability picture, with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation. 38 C.F.R. § 4.114. 

An April 2019 VA examination indicates that the Veteran reported a history of “bad” chest pain in 2013. Since then, he takes medication that helps to control symptoms. Regarding symptoms, the examiner noted that the Veteran had persistently recurrent epigastric distress, dysphagia, pyrosis, reflux, regurgitation, substernal pain, sleep disturbances, episodes of nausea, episodes of vomiting. Frequency of sleep disturbances and episodes of nausea was 4 or more per year, with average duration of less than one day. Frequency of episodes of vomiting was two per year, with average duration of less than one day.

Private treatment records show that the Veteran underwent an esophagogastroduodenoscopy in February 2013. He was diagnosed with esophagitis, hiatal hernia, edema of the false vocal cords, upper esophageal varices, and gastritis. 06/12/2014, Medical Treatment Record - Non-Government Facility. He underwent the same procedure in February 2015. The procedure report indicates that the Veteran’s upper esophagus appeared normal, there was mild friability consistent with esophagitis, and there were no signs of abnormalities in the stomach or duodenum. 02/24/2017, Medical Treatment Record - Non-Government Facility, at 17. Private records show complaints of epigastric, abdominal pain in 2011 and occasionally reference the Veteran’s history of heartburn and reflux but are otherwise silent regarding the Veteran’s gastroesophageal condition. Significantly, the issue was not addressed in a private annual physical from July 2016. 02/24/2017, Medical Treatment Record - Non-Government Facility, at 71. A VA annual physical from February 2017 was similarly silent regarding the Veteran’s service-connected gastroesophageal disability. 05/29/2019, Medical Treatment Record - Government Facility, at 4.

As noted above, for the Veteran to be entitled to the next available rating of 

30 percent under DC 7346, the evidence must show persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. The April 2019 VA examination indicates that the Veteran experiences persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal pain. As such, the question becomes whether symptoms are productive of considerable impairment of health, as required by the rating criteria. 

For instance, the April 2019 VA examination indicates that the frequency of sleep disturbances and episodes of nausea was 4 or more per year, with average duration of less than one day, and that frequency of episodes of vomiting was two per year, with average duration of less than one day. Unfortunately, the finding of “4 or more per year” is not helpful here as it only establishes a minimum of occurrences, putting the adjudicator in the position of having to speculate about the actual number of occurrences. In view of these shortcoming, the Board finds that the April 2019 examination is inadequate and such constitutes a pre-decisional duty to assist error. As such, a remand for a new examination is warranted. 

 

2. Entitlement to service connection for a bilateral retina disability is remanded. 

The Veteran seeks service connection for a bilateral retina disability. He has indicated that, around 2008 and 2009, he underwent laser repair of his retinas and was told by a physician that his retina disability was likely due to diabetes. 

The Veteran has reported permanent vision changes since the procedure. 03/23/2019, Fully Developed Claim; 03/28/2019, Statement in Support of Claim.

A June 2019 VA examination shows diagnoses of chorioretinal scars from bilateral retinal surgery (in 2007, per the examination report) and myopia in both eyes (diagnosed in 1999). The VA examiner concluded that there was no diabetic retinopathy and no loss of vision due to diabetes. Regarding the chorioretinal scars, the examiner indicated that the Veteran did not have any current symptoms.

The June 2019 VA opinion does not show adequate consideration of the Veteran’s arguments. As noted above, the Veteran asserts that he experienced a permanent change in vision following the bilateral retinal procedure. He also asserts that the retinal procedure was to treat a retinal disability related to his diabetes. As the examiner did not consider this theory of entitlement, his opinion is inadequate and a remand is necessary to correct this pre-decisional duty to assist error.

Regarding the bilateral retinal procedure, it is unclear whether this procedure took place at a VA or private treatment facility. In his March 2019 statement, 

the Veteran suggested it was at a VA facility. The June 2019 VA examination, however, appears to reference a private facility. In any event, the Board has reviewed the claims file but found no record of a bilateral retinal procedure between 2007 and 2009. As this conflicting evidence was of record at the time of the July 2019 decision on appeal, the Board finds that it was error for the RO not to have clarified this information with the Veteran. 

These matters are REMANDED for the following actions:

1. Ask the Veteran to identify the facility where the bilateral retinal procedure was conducted. Once the Veteran has identified the facility, take appropriate action to obtain the relevant records. If the procedure was conducted at a VA facility, the RO should consider whether the Veteran’s has asserted entitlement to benefits under 38 U.S.C. § 1151.

2. After completing #1, obtain an addendum opinion regarding the Veteran’s claimed eye disability.

The examiner should opine whether any current eye disability was at least as likely as not caused or aggravated by the Veteran’s service-connected diabetes mellitus type 2. The opinion should address the Veteran’s assertion that he was required to undergo a bilateral retinal procedure to correct an issue related to diabetes. If the examiner finds that such was the case, he or she must then opine whether any current eye disability was caused or aggravated by the bilateral retinal procedure.

A comprehensive rationale for all opinions is to be provided. All pertinent evidence, including both lay and medical, should be considered. If an opinion cannot be given without resorting to speculation, the examiner should explain why and state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), the record (additional facts are required), or the examiner (does not have the knowledge or training). 

3. Obtain an addendum opinion from an appropriate examiner regarding the severity of the Veteran’s gastroesophageal disability.

The examiner is asked to provide more detailed information regarding the level of impairment of health caused by the Veteran’s gastroesophageal symptoms. The examiner is to provide an estimate for the frequency of episodes of nausea and sleep disturbances, per year. The examiner is to also provide a clear and detailed explanation of how and to what extent does the Veteran’s gastroesophageal disability impair his health and/or functioning and/or activities of daily living. If a physical examination is needed to answer these question, then schedule the Veteran for an appropriate examination.

A comprehensive rationale for all opinions is to be provided. All pertinent evidence, including both lay and medical, should be considered. If an opinion cannot be given without resorting to speculation, the examiner should explain why and state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), the record (additional facts are required), or the examiner (does not have the knowledge or training).

 

 

Paul Sorisio

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board P. López, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.