# United States Court of Appeals for the Federal Circuit

---

**MARTHA P. MANZANARES,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2016-1946

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-3646, Judge Mary J. Schoelen.

---

Decided: July 19, 2017

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

MARTIN F. HOCKEY, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR.; BRIAN D. GRIFFIN, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before NEWMAN, DYK, and HUGHES, *Circuit Judges.*

DYK, *Circuit Judge.*

Martha Manzanares, a veteran, has a primary service-connected bilateral ankle condition. During the pendency of a claim for increased rating for her ankle condition, Ms. Manzanares submitted a claim for a back condition as secondary service-connected. She appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") that affirmed a decision by the Board of Veterans' Appeals ("Board"), denying her an earlier effective date for her back condition. We affirm.

## BACKGROUND

This case presents the question whether a claim for increased rating for any service-connected condition necessarily includes a claim for a secondary service-connected condition by virtue of 38 C.F.R. § 3.310(a), with a result that Ms. Manzanares is entitled to an earlier effective date. That regulation states that a "secondary condition shall be considered a part of the original condition."

Ms. Manzanares served on active duty from May 1986 until June 1991. In June 1992, she successfully sought an award of service connection from the Department of Veterans Affairs ("VA") for, *inter alia*, a history of stress fractures in both legs; she was assigned a noncompensable rating.

On February 22, 2006, she submitted a claim for increased rating for injuries to both ankles incurred during service. Then, in August 2006, the VA noted that this condition was previously evaluated as a history of stress fractures in both legs and assigned a ten-percent rating for each ankle. The VA assigned an effective date of February 22, 2006.

In April 2007, Ms. Manzanares filed a notice of disagreement with the rating decision, asserted entitlement to a higher rating, and filed a claim for "[e]ntitlement to service connection for degenerative disc disease lumbar spine as secondary to bilateral ankle disabilities." J.A. 31.

On March 19, 2008, the VA granted secondary service connection for "degenerative arthritis and disc disease, lumbar spine" and assigned a rating of twenty percent with an April 27, 2007 effective date. J.A. 33. Ms. Manzanares then appealed to the Board, arguing that the VA should have awarded an effective date of February 22, 2006, for the secondary service-connected condition. Section 3.156(b) provides that, for a pending claim, "[n]ew and material evidence received prior to the expiration of the appeal period . . . will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period." 38 C.F.R. § 3.156(b). Ms. Manzanares argued that the secondary service connection claim should be treated as new and material evidence within the meaning of this regulation making the secondary service connection claim part of the ankle claim and considered to have been filed on February 22, 2006, the date of her ankle claim. The Board rejected this argument, noting that the effective date for service connection is the later of the date the VA receives the claim or the date that entitlement arose, and concluded that Ms. Manzanares's secondary service claim was not filed until April 27, 2007.

Ms. Manzanares then appealed to the Veterans Court. The Veterans Court found no error in the Board's decision, concluding that the secondary service connection claim was not part of the ankle claim and was not filed until April 27, 2007.

Ms. Manzanares now appeals. We have jurisdiction under 38 U.S.C. § 7292.

DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is limited by statute. 38 U.S.C. § 7292. We review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans] Court in making the decision." *Id.* § 7292(a). We have jurisdiction to decide all relevant questions of law and to "set aside any regulation or interpretation thereof (other than a determination as to a factual matter)," relied upon in the decision of the Veterans Court, that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 7292(d)(1). Our review of these questions is de novo. *See, e.g.*, *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). But absent a constitutional question, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

Under 38 U.S.C. § 5110(a), "the effective date . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." The VA regulations, 38 C.F.R. § 3.400, specifically provide that "the effective date . . . will be the date of receipt of the claim or the date entitlement arose, whichever is the later." Ms. Manzanares advances two different arguments for why she is entitled to an effective date for her back condition that is earlier than the April 2007 date on which the VA received her claim. At oral argument, though, appellant's counsel made clear that Ms. Manzanares is not advocating entitlement to an effective date before her back condition actually arose. Oral Argument at 30:40–31:11, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-1946.mp3.

## I

First, Ms. Manzanares relies on a combination of 38 C.F.R. §§ 3.310(a) and 3.156(b). Section 3.310(a) provides:

> Except as provided in § 3.300(c), disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, *the secondary condition shall be considered a part of the original condition.*

*Id.* (emphasis added). Section 3.156(b) provides:

> New and material evidence received prior to the expiration of the appeal period . . . will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period.

Ms. Manzanares argues that her April 2007 claim for secondary service connection for her back condition was "part" of her pending ankle claim by virtue of § 3.310(a) and she asserts that § 3.156(b) required that the VA treat the "new and material evidence"—*i.e.*, her back claim—"as having been filed" on February 22, 2006, the date of her ankle claim.[1]

---

[1] To qualify as "new and material evidence" under that regulation, Ms. Manzanares's back condition must have already existed at the time that the ankle claim was filed. *See* 38 C.F.R. § 3.156(a) ("New evidence means existing evidence not previously submitted to agency decisionmakers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim."). It is unclear whether her back condition existed on February 22, 2006. It appears as

Second, Ms. Manzanares seems to argue in the alternative that § 3.310(a) treats her back claim as part of her ankle claim for purposes of 38 C.F.R. § 3.400(o)(2). That regulation applies to claims for an increase in disability rating and provides that the effective date is:

> [the e]arliest date as of which it is factually ascertainable based on all evidence of record that an increase in disability had occurred if a complete claim or intent to file a claim is received within 1 year from such date, otherwise, date of receipt of claim.

*Id.* Since her back claim was submitted within one year after the condition arose, she asserts entitlement to an earlier effective date corresponding to the date on which the back condition arose—a date before April 27, 2007.

Section 3.400(o)(2) applies only if the claim is for an increase in disability. Ms. Manzanares admits that she is not seeking an increase in compensation for her secondary service condition, but relying on the language in § 3.310(a), she again asserts that the back claim should be considered to be part of the ankle claim. In this regard, Ms. Manzanares advances a similar argument to that addressed and rejected by the Veterans Court in *Ross v. Peake*, 21 Vet. App. 528 (Vet. App. 2008). In *Ross*, the veteran argued that the language in § 3.310(a) meant that a claim for secondary service connection is treated as a claim for increased compensation for the primary condition, and is assigned an effective date in accordance with § 3.400(o)(2). 21 Vet. App. at 531. The Veterans Court rejected this argument, noting that § 3.310(a) does not control effective dates for secondary conditions and, because a secondary condition is a separate, additional

though the earliest medical record of the back condition is from September 2006.

disability, such a claim cannot be the same as a claim for increased rating, due to the worsening of the underlying primary condition, for instance. 21 Vet. App. at 532–33.

II

Ms. Manzanares essentially seeks to use these two arguments to avoid our holding in *Ellington v. Peake*, 541 F.3d 1364, 1369 (Fed. Cir. 2008), that § 3.310(a) does not mean that primary and secondary conditions receive the same effective date. In *Ellington*, the veteran was initially awarded service connection for leukemia. *Id.* at 1365. He later submitted claims for diabetes and hypertension as secondary service-connected conditions. *Id.* at 1365–66. He pointed to the definition of "secondary condition" in § 3.310(a) and argued that his secondary claims must have the same effective dates as his primary leukemia claim. 541 F.3d at 1369. The court rejected this argument because requiring primary and secondary claims to have the same effective date "would be illogical, given that secondary conditions may not arise until years after the onset of the original condition." *Id.* Indeed, there was evidence in *Ellington* that the veteran's diabetes and hypertension arose after the effective date of his primary leukemia condition. The court held that § 3.310(a) concerns only "*entitlement* to service connection and is silent with respect to the proper *effective date* for service connection." 541 F.3d at 1370. Thus, the normal rules for effective dates govern secondary claims. *Id.* at 1369.

We see no meaningful distinction between this case and *Ellington* even though *Ellington* did not consider the other provisions upon which Ms. Manzanares now relies. Essentially, *Ellington* held that secondary service connection is not part of a primary claim for service connection. We see no basis to depart from that holding. Section 3.310(a) speaks in terms of *conditions*, not *claims*. This distinction is critical. That section provides that a "disability which is proximately due to or the result of a

service-connected disease or injury shall be service con-
nected [and w]hen service connection is thus established
. . . , *the secondary condition* shall be considered a part of
*the original condition.*" *Id.* (emphases added). By its plain
terms, this language does not mean that a *claim* for
secondary service connection is treated as part of the
primary claim for service connection (or a claim for in-
creased rating for the primary condition). Moreover, there
is nothing in the definition of "claim" in 38 C.F.R. § 20.3(f)
that suggests that it includes secondary conditions or that
it carves out a separate rule for secondary service connec-
tion. That regulation simply provides that "[c]laim means
application made under title 38, United States Code, and
implementing directives for entitlement to Department of
Veterans Affairs benefits or for the continuation or in-
crease of such benefits, or the defense of a proposed
agency adverse action concerning benefits." *Id.*

Nor, contrary to Ms. Manzanares's argument, is there
anything in 38 C.F.R. § 3.155(d)(2) that supports her
position. Ms. Manzanares argues that that section re-
quires her back claim to be treated as an "ancillary bene-
fit." *Id.* The regulation provides in relevant part:

> [The] VA will adjudicate as part of the claim enti-
> tlement to any ancillary benefits that arise as a
> result of the adjudication decision (e.g., entitle-
> ment to 38 U.S.C. Chapter 35 Dependents' Educa-
> tional Assistance benefits, entitlement to special
> monthly compensation under 38 CFR 3.350, enti-
> tlement to adaptive automobile allowance, etc.).
> The claimant may, but need not, assert entitle-
> ment to ancillary benefits at the time the com-
> plete claim is filed.

*Id.* A claim for secondary service connection is not an
"ancillary benefit" within the meaning of that regulation;
all of the ancillary benefits referred to in § 3.155(d)(2)

stem from the specific condition that is the subject of the claim, not some other unidentified condition.

There is also nothing in the history of § 3.310(a) to suggest that a claim for secondary service connection should be treated as part of a claim for primary service connection. After argument, we asked the parties to submit supplemental letter briefs on the history of § 3.310(a) and its relationship to § 3.156(b). The briefs provided a helpful description of the history and evolution in language of § 3.310(a), but nothing in that history suggests that secondary service connection is part of a claim for primary service connection or one for increased rating for a primary condition.

The 1933 regulation provided that "[w]hen service connection is thus established for a secondary condition, the secondary condition will be considered a part of the original condition for all purposes, i.e., for determinations regarding rights on account of combat, etc." Veterans Regulation No. 3(a), Instruction No. 1, ¶ 5 (June 24, 1933). In 1936, the final clause of the instruction was removed. *See* Veterans Admin. Regulations, R. & P.R. ¶ 1101 (1936). Then, in 1961, the "for all purposes" language was also removed without explanation. U.S. Dep't of Veterans Affairs, Office of Gen. Counsel, Precedential Op. No. 77-90, at 7 (July 18, 1990) (citing 26 Fed. Reg. 1561, 1582 (1961)). In its current form, § 3.310(a) provides that a "disability which is proximately due to or the result of a service-connected disease or injury . . . shall be considered a part of the original condition." The VA itself has found the "shall be considered a part of the original condition" language to be puzzling, but concluded that it "appears to mean that the service-connected status of the secondary condition is equivalent to such status established on the ground of direct service connection." U.S. Dep't of Veterans Affairs, Office of Gen. Counsel, Precedential Op. No. 2-98, at 5 (Feb. 10, 1998).

Regardless of the precise meaning and purpose behind this portion of § 3.310(a), it cannot mean that primary claims for service connection or subsequent claims for increased ratings for primary conditions necessarily encompass later claims for secondary service connection. Such a reading is inconsistent with the plain language of the regulation, which refers to conditions rather than claims.

Finally, Ms. Manzanares cites our decisions in *Bond v. Shinseki*, 659 F.3d 1362 (Fed. Cir. 2011) and *Beraud v. McDonald*, 766 F.3d 1402 (Fed. Cir. 2014), but neither supports her position. In *Bond*, we held that a claim for increased rating must be treated as potentially "new and material" evidence in support a pending claim for the same condition, if that evidence satisfied the new and material evidence criteria of § 3.156(b). 659 F.3d at 1367. *Beraud* similarly held that it was error for the VA not to consider whether evidence submitted during the appeal period was "new and material." 766 F.3d at 1407. Neither case dealt with secondary service connection, much less suggested that secondary service connection is part of a primary benefits claim.

In short, § 3.310(a) does not make a claim for secondary service connection part of the primary service connection claim. The Veterans Court did not err in awarding an April 27, 2007, effective date for Ms. Manzanares's secondary service connection claim.

## AFFIRMED

### COSTS

No costs.