# United States Court of Appeals for the Federal Circuit

---

**DAVID L. PICKETT,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1057

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-196, Chief Judge Margaret C. Bartley.

---

Decided: April 6, 2023

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY; CHRISTOPHER O. ADELOYE, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before STOLL, SCHALL, and CUNNINGHAM, *Circuit Judges*.

STOLL, *Circuit Judge*.

David L. Pickett appeals the decision of the United States Court of Appeals for Veterans Claims (Veterans Court), which concluded that the Department of Veterans Affairs' (VA) regional office (RO) complied with the requirements of 38 C.F.R. § 3.156(b). As a result, Mr. Pickett's failure to timely appeal certain RO decisions finalized a then-pending claim. The finalized claim could not thereafter provide a basis for an earlier entitlement to total disability rating based on individual unemployability (TDIU). Because the Veterans Court correctly interpreted § 3.156(b), we affirm the Veterans Court's decision.

## BACKGROUND

Mr. Pickett served in the United States Army from September 1969 to September 1971, including service in Vietnam. In April 2004, he filed a claim with the VA for service-connected compensation for a general anxiety disorder, which he attributed to exposure to Agent Orange or other herbicides. J.A. 17–26. The VA eventually granted Mr. Pickett service-connected compensation for post-traumatic stress disorder (PTSD) and coronary artery disease (CAD) effective April 2004. J.A. 51, 68.

The VA first granted Mr. Pickett service connection for CAD in 2010, upon special review of his case as mandated by *Nehmer v. United States Department of Veterans Affairs*, 494 F.3d 846 (9th Cir. 2007). There, the Ninth Circuit upheld an interpretation of a consent decree which requires the VA to readjudicate claims for newly recognized, presumptively service-connected conditions associated with herbicide exposure. *Id.* at 851, 853–54 & n.4. The RO thus granted Mr. Pickett service-connection for CAD effective April 2004, the date his claim first referenced herbicide exposure. J.A. 68, 70.

Mr. Pickett appealed, seeking a higher rating for his service-connected CAD. J.A. 73–74. Within the timeframe to appeal, Mr. Pickett filed VA Form 21-8940, which is an application for TDIU. J.A. 89–90. Mr. Pickett's 2011 VA Form 21-8940 lists CAD and PTSD as preventing him from "securing or following any substantially gainful occupation" starting June 30, 2007, the date he last worked. J.A. 89 (boxes 6, 12–14).

Relevant here are two subsequent RO decisions dated January 2013 and April 2014.

The January 2013 RO decision lists the 2011 VA Form 21-8940 as evidence considered. J.A. 91 (fifth bullet point). In an attached sheet, the RO decision notes that "[e]ntitlement to individual unemployability," understood to mean TDIU, "is denied" and to "please tell vet, 'VA exam dated February 3, 2012 states that your CAD does not prevent you from performing sedentary employment tasks and light physical employment and your PTSD examiner states that you are in full remission and you appear to have little functional impairment.'" J.A. 95. The VA explained to Mr. Pickett in a notice letter that his claim for TDIU was denied "because the evidence does not show [that he is] unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." J.A. 99. The VA also notified Mr. Pickett that he had a year to appeal. *Id.* He did not appeal.

The April 2014 RO decision lists the January 2013 RO decision, as well as the evidence it relied on—i.e., among other things, the 2011 VA Form 21-8940—as evidence considered in the decision. J.A. 102 (second bullet point). This 2014 decision explains that Mr. Pickett's TDIU claim "was denied because the evidence does not show [that he is] unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." J.A. 103. The decision also proposes decreasing Mr. Pickett's PTSD rating. J.A. 101. Mr. Pickett only challenged the proposed

reduction to his PTSD rating and did not appeal the denial of his TDIU claim.

Years later, in January 2017, Mr. Pickett filed a supplemental claim and new TDIU application, again indicating that he was unemployed due to service-connected CAD and PTSD.  J.A. 157–65.  Following additional VA examinations, the RO awarded Mr. Pickett TDIU due solely to PTSD and increased his ratings for CAD and PTSD, all effective January 2017, the date the VA received the most recent claim.  J.A. 104–10.

Mr. Pickett filed a notice of disagreement (NOD).  He argued that under the correct application of 38 C.F.R. § 3.156(b), he was entitled to "an extraschedular total rating," which could include TDIU, effective from June 2007 (the date last worked) through January 2017, based on his service-connected CAD.  J.A. 111–15.  The RO disagreed, finding that the January 2013 and April 2014 RO decisions denied entitlement to TDIU, were not appealed, and thus became final.  In other words, that claim stream ended.  As a result, Mr. Pickett could not reach back to that claim stream to seek TDIU before 2017.  Mr. Pickett appealed to the Board of Veterans' Appeals.

Before the Board, Mr. Pickett argued that, in assessing his April 2004 claim, the VA did not properly apply § 3.156(b) because it failed to assess whether his 2011 VA Form 21-8940 was new and material evidence that supported that claim.  J.A. 139–41.  This meant, he argued, that his April 2004 claim remained pending, J.A. 142, which in turn could allow Mr. Pickett to seek entitlement to TDIU prior to January 2017.  That is, Mr. Pickett's entitlement to TDIU prior to January 2017 rested on whether the April 2004 claim remained pending.  The Board denied Mr. Pickett an earlier effective date for his service-connected CAD, **[J.A. 144–49]** and he appealed to the Veterans Court.  *Pickett v. McDonough*, No. 20-0196, 2021 WL 2669688 (Vet. App. June 30, 2021).

The Veterans Court affirmed the Board's decision. First, the Veterans Court agreed with Mr. Pickett that the Board erred in characterizing the issue on appeal as an earlier effective date for an increased CAD rating, rather than "an extraschedular total CAD evaluation, *including TDIU*." *Id.* at \*4 (emphasis added). But the Veterans Court held that the Board's mistake and subsequent analysis was harmless error because the RO "implicitly made the § 3.156(b) determination and considered the September 2011 VA Form 21-8940 in connection with the April 2004 CAD claim." *Id.* Specifically, the Veterans Court found that the January 2013 RO decision:

> [1] listed the September 2011 VA Form 21-8940 among the evidence it considered in making its decision; [2] addressed entitlement to TDIU due to CAD, an issue that was first raised expressly in that submission; and [3] rendered a TDIU decision on the merits, explaining that that benefit was denied because a February 2012 VA examination showed that his service-connected CAD did not preclude substantially gainful sedentary or light physical employment.

*Id.* (citations omitted). Thus, the Veterans Court determined that the RO "essentially treated [the 2011 VA Form 21-8940] as new and material evidence, and considered it in connection with the pending CAD evaluation claim." *Id.*

The Veterans Court next explained that Mr. Pickett's failure to perfect an appeal following the January 2013 or the April 2014 RO decision meant that Mr. Pickett's April 2004 claim for the maximum CAD evaluation—including entitlement to TDIU—became final by 2017, when the VA granted Mr. Pickett TDIU for PTSD and increased ratings for his service-connected CAD and PTSD. *Id.* Hence, because only Mr. Pickett's new TDIU application remained pending at that time, Mr. Pickett was not entitled to TDIU before 2017.

Mr. Pickett appeals. We have jurisdiction under 38 U.S.C. § 7292(c).

### DISCUSSION

This appeal hinges on the interpretation of 38 C.F.R. § 3.156(b). Specifically, we must determine whether the VA may indicate its compliance with § 3.156(b) implicitly, as the Veterans Court found, or must do so explicitly, as Mr. Pickett argues. If Mr. Pickett is correct, and the VA failed to make an explicit finding as to whether the 2011 VA Form 21-8940 is new and material evidence, then Mr. Pickett contends that this evidence relates to the pending April 2004 claim and thus his April 2004 claim remains pending. As such, Mr. Pickett argues that he could be entitled to TDIU prior to 2017. On the other hand, if Mr. Pickett's interpretation of § 3.156(b) is wrong, then the April 2004 claim stream ended when he failed to appeal the January 2013 or April 2014 RO decisions and he is not entitled to TDIU before 2017.

We review the Veterans Court's interpretation of a regulation de novo. *See* 38 U.S.C. § 7292(c); *Breland v. McDonough*, 22 F.4th 1347, 1350 (Fed. Cir. 2022). We start our interpretation analysis with the language of the regulation at issue.

Section 3.156(b) provides that:

> New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed . . . , will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period.

The regulation provides that the VA must treat (1) new and material evidence (2) received prior to the end of the appeal period (3) as having been filed in connection with the claim that was pending at the beginning of the appeal period. While the VA must comply with the regulation,

nothing in the text of the regulation states that the VA must expressly state its analysis under this regulation.

Mr. Pickett argues that § 3.156(b) requires more from the VA than "merely act[ing] on" or "addressing" evidence in a VA decision. Appellant's Br. 17; Reply Br. 10. In other words, the VA must do more than list evidence that is new and material and filed before the end of the appeal period as evidence considered in the case. He argues that an assessment under § 3.156(b) "must be *explicitly* stated in [a VA] decision." Appellant's Br. 16 (emphasis added). During oral argument, Mr. Pickett's counsel stated that "magic words" are necessary to indicate whether the VA made the proper assessment under § 3.156(b). Oral Arg. at 12:10–13:03, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1057_02092023.mp3. Specifically, in Mr. Pickett's view, making an appropriate assessment under § 3.156(b) requires the VA to state (i) that it received the evidence; (ii) whether the evidence is new and material; and (iii) if the evidence is new and material, whether the evidence relates back to the original claim. *Id.* We disagree and conclude based on the regulatory text itself that § 3.156(b) does not require an explicit assessment nor the inclusion of "magic words."

Mr. Pickett asserts that our own precedent—particularly *Bond v. Shinseki*, 659 F.3d 1362 (Fed. Cir. 2011) and *Beraud v. McDonald*, 766 F.3d 1402 (Fed. Cir. 2014)—requires the VA to provide the explicit analysis that he advocates. Appellant's Br. 16–17. We disagree.

In *Bond*, we held that under § 3.156(b) "the VA must evaluate submissions received during the relevant period and determine whether they contain new evidence relevant to a pending claim." 659 F.3d at 1369. There, the VA evaluated whether the evidence it received supported a *new* claim but failed to consider whether it constituted new and material evidence for a *pending* claim, as § 3.156(b) dictates. *See id.* at 1367–68. Importantly, "nothing in the

record indicate[d] that the RO or Board" determined whether the evidence submitted was new and material. *Id.* at 1368. We explained how, "[a]bsent any indication in the record that this analysis occurred, we decline to presume that the VA considered, but rejected, the possibility that Mr. Bond's . . . submission contained new and material evidence relating to his [pending] claim." *Id.* We also expressed reluctance to assume the VA made "an unstated finding" where, as was true in that case, the submission "would seem to compel the opposite conclusion" than what the RO reached. *Id.* Thus, *Bond* explains that a determination under § 3.156(b) is mandatory, but it left the door open for an implicit determination so long as there is some indication in the record that the proper analysis occurred.

Similarly, in *Beraud*, we affirmed *Bond* and the VA's obligation under § 3.156(b) to "provide a determination that is directly responsive to the new submission." 766 F.3d at 1407. There, the Veterans Court found that a pending claim became final upon the VA's final denial of an identical claim despite the VA's failure to analyze the pending claim under § 3.156(b). *Id.* at 1404. We reversed, again holding that the VA must make a determination under § 3.156(b) and that a pending claim is not finalized until the VA makes the required § 3.156(b) determination. Relevant here, we rejected the government's invitation to presume that the VA considered the veteran's submission because there was "no indication that the VA made its required determination under § 3.156(b)." *Id.* at 1406–07. Notably, we explained that "such a general presumption applies where the record before the VA is complete and there is no statutory or regulatory obligation that would be thwarted by application of the presumption." *Id.* at 1406. But we cautioned against applying a presumption that the VA considered evidence where there is "no firm trace of [the VA's potential] dereliction in the record." *Id.* at 1407. We emphasized that this is especially so in situations where "the government asks us to indulge a presumption that the

VA considered records it never obtained." *Id.* Thus, *Beraud* also left the door open for the VA to demonstrate its compliance with the requirements of § 3.156(b) via an implicit determination so long as that implicit determination is clear on the record. Like *Bond*, *Beraud* requires some indication in the record of a directly responsive decision, but no "magic words."

Relatedly, in a more recent opinion, we held that under § 3.156(b) the VA "is not required to explicitly determine whether a submission constitutes 'new and material evidence' where . . . the conditions underlying the two claims have no apparent connection." *Gudinas v. McDonough*, 54 F.4th 716, 721 (Fed. Cir. 2022). While *Gudinas* concerned different circumstances than those before us, our holding here is consistent: Section 3.156(b) does not require the VA to invoke any "magic words."

In other words, the VA's obligation under § 3.156(b) is mandatory, but our case law does not require the VA's decision to include specific words to fulfill the requirements of § 3.156(b). Instead, consistent with the text of § 3.156(b), *Bond* and *Beraud* allow for an implicit finding so long as there is some indication that the VA determined whether the submission is new and material evidence and, if so, considered such evidence in evaluating the pending claim.

Here, the Veterans Court's understanding of § 3.156(b) was the same as ours. *See Pickett*, 2021 WL 2669688, at \*5 ("[T]he RO issued a rating decision in Mr. Pickett's case that directly responded to his submission during the relevant appeal period, essentially treated that submission as new and material evidence, and considered that evidence in conjunction with the then-pending claim."). Accordingly, because the Veterans Court did not err in its interpretation of what § 3.156(b) requires, we affirm the Veterans Court's decision.

CONCLUSION

For the reasons above, we hold that the VA may fulfill its mandatory obligation under § 3.156(b) implicitly. For sure, there must be some indication that the proper analysis under the regulation occurred, but we hold that § 3.156(b) does not require the VA to invoke certain "magic words" in its decision.

We have considered Mr. Pickett's remaining arguments and find them unpersuasive. For the reasons above, we affirm the Veterans Court's decision.

**AFFIRMED**

COSTS

No costs.